1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9

THEO HANSON,

CASE NO. 14cv356-MMA-BGS

10

Plaintiff,

**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

11

vs.

12

MARK HANSON, et al.,

[Doc. No. 2]

13

Defendants.

14

15     Plaintiff Theo Hanson has filed a pro se complaint against Defendant Mark

16 Hanson,[1] Heartland Coalition, Inc., Alan Cassell, Chris Kleber, James Gormican,

17 and Rock West Composites, Inc. (collectively "Defendants"), alleging tortious fraud

18 and deceit, violations of the Racketeer Influenced and Corrupt Organizations Act

19 ("RICO"), 18 U.S.C. §§ 1962 *et. seq*, and conversion.  Concurrently, Plaintiff moves

20 for a temporary restraining order ("TRO").  For the reasons stated below, the Court

21 **DENIES** Plaintiff's motion.

22                                    **BACKGROUND[2]**

23     Plaintiff, an individual, is a citizen of Chicago, Illinois.

24     Defendant Mark Hanson is an individual and resident of San Diego,

25

26     [1] Plaintiff and Defendant Mark Hanson bear no relation.  For purposes of clarity, the Court will refer to Plaintiff Theo Hanson as "Plaintiff" and Defendant Mark Hanson

27 as "Defendant Hanson."

28     [2] Plaintiff has only submitted his complaint and two-page application for a TRO. As such, the background consists of Plaintiff's allegation in the complaint.

California.  He also serves as the director of Defendant Heartland Coalition, Inc. ("Heartland Coalition") and Defendant United Green Industries ("UGI").  Heartland is a California non-profit corporation with its principal place of business in the Southern District of California.  UGI is a California for-profit corporation with its principal place of business in the Southern District of California.

Defendants Alan Cassell and James P. Gormican are both individuals.  They also serves as directors and/or officers of Heartland Coalition and UGI.  Defendant Chris Kleber is an individual.

Defendant Rock West Companies, Inc. ("Rock West"), is a California corporation with its principal place of business in the Southern District of California. Defendant Gormican is the principal of Rock West.

Plaintiff contends that he owns 25% of stock in UGI.  Defendants Mark Hanson and Alan Cassell also own 25% each of stock in UGI.  Plaintiff also owns various items of personal property valued at more than $15,000.  Plaintiff maintains that his personal property is located in the UGI offices.

On January 16, 2014, Defendant Hanson proposed an attempted asset sale of UGI to Rock West for $300,000.  Plaintiff contends this sale was not reasonable because UGI's asserts were valued at $500,000.  Plaintiff alleges that the remaining directors and shareholders immediately rejected the proposed sale.  Additionally, Plaintiff submitted a written letter of objection and protest in response to the proposed sale, which he sent to the remaining directors and proposed buyer.

On January 24, 2014, Defendant Hanson unilaterally sold UGI asserts to another buyer, Defendants Cassell and Kleber, for the same price.  Plaintiff contends that the three Defendants knew that Defendant Hanson did not have the authority to do so.  On January 27, 2014, Defendant Hanson resold the same property, UGI, to Defendants Gormican and Rock West under the same terms that had previously been rejected.  Plaintiff contends that Defendant Gormican knew that Defendant Hanson lacked the authority to do so.

1    Plaintiff contends that Defendant Hanson notified him of the sale and then

2  locked UGI's offices, stole Plaintiff's personal property, and threatened to steal

3  Plaintiff's remaining property if Plaintiff was not out of the building before the new

4  buyer moves in on Sunday, February 16, 2014.  Plaintiff contends that he was never

5  presented with any valid notice ordering him to vacate UGI's premises.

6    Plaintiff now moves for a TRO compelling Defendants to return Plaintiff's

7  personal property and to cease and enjoin the transfer of corporate assets to third

8  parties.  Plaintiff contends that he will suffer irreparable harm absent a TRO because

9  Defendants have threatened to steal and destroy more of Plaintiff's property on

10 Sunday, February 16, 2014 if Plaintiff does not move out of his business location.

11                                   <u>LEGAL STANDARD</u>

12 *A.    Temporary Restraining Order*

13    The standard for a TRO is the same as for a preliminary injunction.  *See*

14 *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir.

15 2001).  "A plaintiff seeking a preliminary injunction must establish that he is likely

16 to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

17 preliminary relief, that the balance of equities tips in his favor, and that an injunction

18 is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

19 (2008)

20    In the Ninth Circuit, courts may apply a sliding scale approach in which

21 "elements of the preliminary injunction test are balanced, so that a stronger showing

22 of one element may offset a weaker showing of another."  *Alliance for the Wild*

23 *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  For example, "a stronger

24 showing of irreparable harm to plaintiff might offset a lesser showing of likelihood

25 of success on the merits."  *Id.*  Additionally, a "preliminary injunction is appropriate

26 when a plaintiff demonstrates . . . that serious questions going to the merits were

27 raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134-

28 35 (citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

1   Importantly, courts may deny a preliminary injunction solely on ground that

2  the plaintiff failed to raise even "serious questions" as to the merits.  *See Guzman v.*

3  *Shewry*, 552 F.3d 941, 948 (9th Cir. 2009).

4  **B.  Standards Applicable to Pro Se Litigants**

5   Generally, courts must broadly construe pleadings filed by pro se litigants,

6  affording pro se plaintiffs any benefit of the doubt.  *See Erickson v. Pardus*, 551

7  U.S. 89, 94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

8   <u>DISCUSSION</u>

9  **A.  Likelihood of Success on the Merits[3]**

10   In his complaint, Plaintiff brings three causes of action for (1) fraud and

11  deceit; (2) RICO violations; and (3) conversion.  Plaintiff does not indicate which

12  cause of action is the basis for his motion for a TRO.  As such, the Court considers

13  the likelihood of success on the merits for each cause of action in turn.

14   **1.  Fraud or Deceit**

15   Under California law, a claim for fraud has five elements: (1)

16  misrepresentation (a false representation, concealment, or nondisclosure), (2)

17  knowledge of the falsity of the misrepresentation, (3) intent to induce reliance on the

18  misrepresentation, (4) justifiable reliance, and (5) resulting damage.  *Small v. Fritz*

19  *Cos., Inc.,* 30 Cal.4th 167, 132 Cal. Rptr. 2d 490, 65 P.3d 1255, 1258 (Cal. 2003).

20  Thus, to make a showing of likelihood of success on the merits, Plaintiff must satisfy

21  each of the five elements.

22   Here, even relying on Plaintiff's allegations in the complaint alone and

23  construing them liberally as the Court must for pro se plaintiffs, Plaintiff has not

24  shown a likelihood of success on the merits of his claim for fraud.  For example,

25  Plaintiff has not demonstrated the first element—a misrepresentation.  Although

26

27  ───────────────
   [3] The Court notes a motion for a TRO is not subject to the 12(b)(6) standard in
28  which it takes as true the allegation of the complaint.  However, because Plaintiff
   exclusively relies on the allegations in his complaint, the Court considers the
   allegations.

1  Plaintiff states generally that "defendants made several misrepresentation to the
2  plaintiff with regard to important facts," and claims that these representations were
3  false, he does not indicate what the representations were, what important facts they
4  related to, or how they were false. *See* Compl. ¶ 25.  These allegations are
5  insufficient to show that Plaintiff will likely succeed on the merits of his claim for
6  fraud.

7  ## 2.    *RICO*

8  A RICO claim requires the plaintiff to demonstrate: (1) conduct (2) of an
9  enterprise (3) through a pattern, i.e., at least two acts that are sufficiently related, (4)
10  of racketeering activity."  *See Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496,
11  498 (9th Cir. 1985) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)).
12  To demonstrate the existence of an enterprise, the plaintiff must allege an entity
13  "associated together for a common purpose of engaging in a course of conduct."
14  *Croteau v. Nat'l Better Living Ass'n, Inc.*, 290 F.R.D. 521, 533 (D. Mont. 2013)
15  (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).  This requires "evidence of an
16  ongoing organization, formal or informal, . . . function[ing] as a continuing unit." *Id.*
17

18  Again, Plaintiff has not demonstrated a likelihood of success on the merits as
19  to his RICO claim.  Plaintiff alleges that "[t]he predicate acts which constitute this
20  pattern of racketeering activity were part of a scheme to swindle the plaintiff and
21  others similarly situated by stealing and selling property that was not their to sell or
22  buy." Compl. ¶ 32.  Plaintiff, however, has not sufficiently identified the precise
23  conduct at issue, or alleged any facts to support the existence of an enterprise.
24  Although Plaintiff claims that "the defendants used the Unites States Postal Service,
25  caused items to be delivered by commerical interstate carrier," Plaintiff does not
26  identify which items or how or when Defendants purportedly mailed.  Accordingly,
27  even construing this allegation liberally, the Court finds that Plaintiff has not
28  demonstrated a likelihood of success of the merits as to his RICO claim.

### 3.     Conversion

Under California law, the elements of a conversion claim are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or dispossession of plaintiff's property rights; and (3) damages.  *Hartford Financial Corp. v. Burns*, 96 Cal. App.3d 591, 598, 158 Cal. Rptr. 169 (1979); *see also Miles, Inc. v. Scripps Clinic & Research Found*, 810 F. Supp. 1091, 1094 (S.D. Cal. 1993).

Here, Plaintiff claims that he has personal property in the UGI office that Defendant has threatened to steal if Plaintiff was not out of the building before the new buyer is scheduled to move in.  Apart from these bare-bone allegations, Plaintiff has not identified the property at issue or how Defendant purportedly converted or dispossessed Plaintiff of this property.  Even construing his allegations liberally, Plaintiff has not demonstrated a likelihood of success on the merits of his conversion claim.

As explained above, Plaintiff has not demonstrated a likelihood of success on the merits of his claims.  As such, the Court will deny Plaintiff's motion for a TRO. *See Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009) ("[A]t an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.").

### B.     Irreparable harm in the Absence of a TRO

Even if Plaintiff had demonstrated a likelihood of success, Plaintiff has not shown that he will likely suffer irreparable harm absent a TRO. "Under *Winter,* plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."  *Cottrell*, 632 F.3d at 1131 (citing *Winter*, 555 U.S. at 21) (emphasis in original).  Here, Plaintiff argues that he will be immediately and irreparably harmed by Defendants' actions because Defendants are attempting to evict Plaintiff from his former place of business before he can remove his remaining personal property from the premises.  Plaintiff estimates the value of said personal

1  property to be $15,000.00.  This type of alleged irreparable injury constitutes

2  monetary harm.  The fact that adequate compensatory damages will ultimately be

3  available in the ordinary course of litigation weighs heavily against a claim of

4  "irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  "[M]onetary harm

5  is usually not enough to constitute irreparable harm."  *Los Angeles Memorial*

6  *Coliseum Comm' v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).

7  CONCLUSION

8  Based on the foregoing, the Court **DENIES** Plaintiff's motion for a

9  Temporary Restraining Order.

10  **IT IS SO ORDERED.**

11

12  DATED:  February 14, 2014

13

14  Hon. Michael M. Anello
   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28